UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MASOUD DEYLAMI, *et al.*,

　　Plaintiffs,

　v.

KRISTIN KVIEN, *et al.*,

　　Defendants.

Civil Action No. 23-1393 (TSC)

## MEMORANDUM OPINION

Plaintiffs, a group of Iranian nationals, sued to compel agency action on their student visa applications. Compl. ¶¶ 8–16. All but one of those Plaintiffs, Mohammadhassan Shirazi, have withdrawn from this suit. Notice of Voluntary Dismissal, ECF No. 13; Notice of Voluntary Dismissal, ECF No. 18. Defendants, the U.S. Ambassador to Armenia and the U.S. Secretary of State, have moved to dismiss the case. Mot. to Dismiss, ECF No. 7 ("MTD"). For the reasons set forth below, the court will GRANT Defendants' motion.

### I.　BACKGROUND

The Immigration and Nationality Act ("INA") governs the issuance of visas to foreign nationals seeking to enter the United States on a permanent ("immigrant") or temporary ("nonimmigrant") basis. 8 U.S.C. § 1101 *et seq.* Within that framework, the "F-1" nonimmigrant visa category allows foreign nationals "qualified to pursue a full course of study" to "enter the United States temporarily and solely for the purpose of pursuing" that study. 8 U.S.C. § 1101(a)(15)(F)(i). To seek an F-1 visa, an applicant must submit an I-20 form that includes certification from the educational institutional they seek to attend and evidence of financial support. 8 C.F.R. § 214.2(f)(1)(i). Once an application is submitted, the applicant

typically attends an in-person interview at a U.S. embassy or consulate. *See* 8 U.S.C. § 1202(h). Once the application and interview process is completed, a consular officer "must issue the visa, refuse the visa[,] . . . or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a).

According to the Complaint, Plaintiff Shirazi appeared for his F-1 visa interview on December 10, 2021, at the U.S. Embassy in Yerevan, Armenia. Compl. ¶ 11. The consular officer conducting the interview "informed [Shirazi] that additional processing was necessary before the visa could be issued" and placed his application in "administrative processing." *Id.* ¶¶ 11, 55. The officer required Shirazi to supplement his application with up to fifteen years of information on his "1) travel history; 2) family information; 3) residential history; 4) phone number and email addresses; 5) previous passport numbers; 6) a list of prior occupations and employers; and 7) social media information." *Id.* ¶ 56. Shirazi "submitted the requested information within days," but there has been no further action on his application or change in its status since that time, and he has not received "guidance or responsive information explaining why [his] visa[] remain[s] pending or a timeline for a decision." *Id.* ¶¶ 1, 57, 59.

The consular officer's decision to place Shirazi's application in administrative processing was a form of visa "refusal." *See* MTD at 6 (citing State Department online case tracker, which shows his application status as "Refused"). A visa refusal

> means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused . . . at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. When a consular officer refuses a case . . . , she or he will convey to the applicant whether the applicant is required to provide any further documentation or information, or whether the case requires additional administrative processing.

*Administrative Processing Information*, U.S. Dep't of State.[1]  "The duration of the administrative processing will vary based on the individual circumstances of each case."  *Id.*

Plaintiff challenges the delay in further action on his application under the Administrative Procedure Act ("APA").  Compl. ¶¶ 86–96.  He seeks "an order compelling Defendants to make a final decision on [his application] within 7 days or prior to the start date of [his] full course of study, whichever date comes first."  *Id.* at 17.  Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6), citing six grounds: (1) Plaintiff lacks standing to challenge a visa refusal; (2) there is no nondiscretionary duty to take further action on Plaintiff's visa action; (3) Plaintiff's claims are non-justiciable; (4) the Secretary of State is an improper defendant; (5) the consular non-reviewability doctrine bars challenges to visa refusals; and (6) the delay in further action is not unreasonable.  *See* MTD at 10–44.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), a plaintiff must establish that the court has subject matter jurisdiction over the claims at issue.  *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In evaluating such motions, courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, the court may consider "any documents either attached to or incorporated in the complaint[,] and matters of which [courts]

---

[1] *Available at* https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/2WS5-5RGV].  Courts in this jurisdiction frequently take "judicial notice of information posted on official public websites of government agencies."  *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." But as with a 12(b)(1) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted). That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. And a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotations omitted).

### III.   ANALYSIS

The Complaint properly names the Secretary of State as a defendant and establishes Shirazi's standing to bring this suit. But because it does not allege "that an agency failed to take a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted), the Complaint must be dismissed. Accordingly, the court need not reach Defendants' alternative arguments for dismissal based on the consular nonreviewability doctrine and related principles of justiciability.

### A. Proper defendant

The Secretary of State is a proper defendant. The redressability requirement of standing turns on "whether the relief sought, assuming that the court chooses to grant it, will likely

alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996). Defendants argue that "action on visa applications" is "the exclusive province of the U.S. embassy." MTD at 30. And it is true that the INA "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).

"Control over a consular officer's visa *determinations*—that is, her decisions to 'grant, deny, or revoke immigrant and non-immigrant visas,'" however, "is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (quoting *Saavedra Bruno*, 197 F.3d at 1156) (formatting modified). Shirazi does not seek to compel a particular decision on his application, only to compel that the administrative processing be completed on a certain timeline. *See* Compl. at 17. And Defendants do not contend that the Secretary lacks authority to "direct[] consular officers 'to conclude . . . matter[s] presented to [them]' 'within a reasonable time,'" nor do they identify any authority supporting such a defense. *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)). Accordingly, the Secretary of State need not be dismissed on these grounds.

B. <u>Standing</u>

Defendants' broader challenges to standing also fail. Their primary contention is that the Complaint does not plead "an injury in fact." MTD at 11–15. But courts in this district routinely recognize "particularized injury" resulting from "a delay in adjudicating [a] visa petition[]." *Al-Gharawy*, 617 F. Supp. 3d at 9; *see, e.g.*, *Babaei v. United States Dep't of State*, 725 F. Supp. 3d 20, 26 (D.D.C. 2024) ("As other judges in this District have consistently held, visa applicants

enjoy a procedural right to reasonably expeditious agency action that is tethered to their concrete professional and financial interest.") (formatting modified).  Shirazi alleges that the delay here is tethered to the loss of educational and professional opportunities he seeks by studying in the United States, and that the delay has already caused uncertainty and at least one change of plans with respect to those opportunities.  Compl. ¶ 11.  That establishes his injury in fact.  *See, e.g.*, *Rahman v. Blinken*, No. CV 22-2732 (JEB), 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023) (recognizing a "concrete professional and financial interest in earning an advanced degree").

Defendants also argue that any action on Shirazi's application would not redress his injury because his visa would still be denied pursuant to the statutory bar that "precludes any State Department official from issuing a nonimmigrant visa to a national of a state sponsor of terrorism unless a specific determination is made that the noncitizen applicant 'does not pose a threat to the safety or national security of the United States.'"  MTD at 16 (quoting 8 U.S.C. § 1735(a)).  That argument mistakes the injury and remedy at issue here.  Plaintiff seeks further "adjudication of [his] application[]; not a specific outcome."  *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Pompeo*, No. 18-cv-1388 (TSC), 2019 WL 367841, at *8 (D.D.C. Jan. 30, 2019); *see* Compl. at 17.  Defendants' allegedly unreasonable delay "would be redressed by a decision, one way or the other."  *Babaei*, 725 F. Supp. 3d at 27.  That is enough to support standing here.

C. **Consular non-reviewability and nonjusticiability**

Defendants also contend that the refusal and continued administrative processing of Plaintiff Shirazi's visa application are immune from judicial review for two related reasons.  First, they cite the consular nonreviewability doctrine, which "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise."  *Baan Rao*, 985 F.3d at 1024.  Defendants argue that a consular officer's "refusal" of

a visa application always constitutes a nonreviewable "withholding of a visa." MTD at 32. However, several courts in this district have rejected that argument, concluding that such "refusal" may be reviewable where it appears to be "merely provisional, with a final decision yet to come"—*e.g.*, because "administrative processing" remains ongoing. *Al-Gharawy*, 617 F. Supp. 3d at 16; *see also Akrayi v. United States Dep't of State*, No. 22-CV-1289, 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023). That is the status Shirazi alleges: His application "was placed in administrative processing," where it has remained indefinitely. Compl. ¶¶ 11, 59.

The court need not decide this issue. "Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)." *Baan Rao*, 985 F.3d at 1027. And because the court concludes that there are independent reasons to dismiss Shirazi's claims, *see infra* Section III.D., it need not decide whether consular nonreviewability applies, *see Almaqrami v. Pompeo*, 933 F.3d 774, 784 n.3 (D.C. Cir. 2019) ("[C]ourts may assume without deciding that plaintiffs' statutory claims are reviewable and proceed to the merits notwithstanding consular nonreviewability." (internal quotation omitted)); *Zandieh v. Pompeo*, No. CV 20-919 (JEB), 2020 WL 4346915, at *4 (D.D.C. July 29, 2020) ("[B]ecause it finds that the delay asserted here is not unreasonable," the court "need not decide whether plaintiffs' claims are reviewable." (internal quotation omitted)).

Second, Defendants raise similar arguments based on general principles of justiciability. They point to the political branches' longstanding prerogative over noncitizens' entry into the United States (the rationale for the consular nonreviewability doctrine, *see* MTD at 31), asserting that any statutory claim to "visa issuance and admission" is therefore presumptively nonjusticiable, and that the APA does not allow judicial review because there is no "meaningful judicial standard available for the Court to assess [their] discretionary decision-making" in

matters of immigration, MTD at 23–30. Even accepting those assertions as true, however, they do not necessarily preclude the court from assessing the claims in this case. As already noted, the Complaint does not challenge "a consular officer's visa *determinations*—that is, her decisions to 'grant, deny, or revoke immigrant and non-immigrant visas,'" but rather "the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting *Saavedra Bruno*, 197 F.3d at 1156) (formatting modified); *see supra* Section III.A. The APA expressly authorizes judicial review of the time it takes agencies to act. 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed.")

In any event, Defendants do not cite any authority suggesting that these general objections to justiciability are jurisdictional and thus must be considered even if the claims fail on the merits. Indeed, they acknowledge that "not every justiciability concern is one of subject matter jurisdiction." MTD at 23 n.5 (quoting *Matthew A. Goldstein, PLLC v. Dep't of State*, 153 F. Supp. 3d 319, 331 n.9 (D.D.C. 2016), *aff'd*, 851 F.3d 1 (D.C. Cir. 2017)). Because Defendants' justiciability arguments rely on the same principles underlying the consular nonreviewability doctrine, the court likewise considers those arguments to go to the merits rather than jurisdiction. And because there are independent defects in the merits of Plaintiff's claims, *see infra* Section III.D., the court need not resolve the justiciability issues that Defendants raise.

D. <u>Unreasonable delay</u>

Recent D.C. Circuit precedent forecloses the APA claim raised in this case. In *Karimova v. Abate*, as here, the plaintiff had been interviewed for a visa, but her application had been "refused" and "placed . . . in administrative processing." No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (quotation omitted). The plaintiff likewise claimed that the subsequent delay was unlawful and, invoking the APA, she "asked the court to 'compel' the consular officer

to perform her duty to finally adjudicate her visa." *Id*. The Circuit refused to grant that relief because the plaintiff had "not identified any law 'plainly prescrib[ing]' that the consular officer not put an officially refused visa application in administrative processing," a required element of a claim under the APA. *Id.* at *3 (quoting *Interstate Commerce Comm. v. New York, N.H. & H.R. Co.*, 287 U.S. 178, 204 (1932)).

In so holding, the Circuit specifically rebuffed the plaintiff's reliance on APA § 555(b), which provides that "each agency shall proceed to conclude a matter presented to it" "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." The Circuit reasoned that the plaintiff's "'matter' ha[d] already been 'conclude[d]'" when the consular officer refused her application. *Id.* at *4. Thus, "Section 555(b) *at most* could have entitled her to the official refusal decision she already received" and "does not in any way dictate how the agency can handle her rejected paperwork after" refusal. *Id.*

The *Karimova* decision is fatal to the claim of unreasonable delay in this case. Shirazi also relies primarily on APA § 555(b) as establishing the "non-discretionary action" framing the relief he seeks under the APA. Mem. in Opp'n to Defs.' Mot. to Dismiss at 15–16, 20, ECF No. 9; *see* Compl. ¶ 21, 64. But the D.C. Circuit squarely rejected that argument in *Karimova*, and this court must follow suit. Because refusal concludes the matter presented by a visa application, Section 555(b) does not establish a duty to take the action that Shirazi claims has been unreasonably delayed—further adjudicating his refused visa application. Similarly, regulations requiring consular officers "properly and promptly" process visa applications, deciding to "issue" or "refuse" them when completed, 22 C.F.R. §§ 41.106, 41.121(a), were satisfied when Shirazi's application was "refused," *Karimova*, 2024 WL 3517852, at *4.

Because Plaintiff has not identified a duty for Defendants to further adjudicate his refused visa applications, he has no basis on which to claim that that action has been unreasonably delayed.

## IV.     CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 7, and DISMISS the Complaint. A corresponding Order will accompany this Memorandum Opinion.

Date: January 16, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge